

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller Public Accounts
Austin, Texas

Dear Sir:

Opinion No. 0-5427
Re: Effect of Senate Bill No.
266 Acts Regular Session
Forty-Eighth Legislature
upon payment of current
rentals under existing
leases and related ques-
tions.

     We have your letter of June 22, 1943, requesting
an interpretation by this department of Senate Bill No. 266
passed at the Regular Session of the Forty-Eighth Legisla-
ture. We quote your letter in full as follows:

     "I will thank you to examine Senate Bill
No. 266 Acts of the Regular Session of the
Forty-eighth Legislature, and advise this de-
partment:

     "1. Whether this Bill will affect the
payment of current rentals accruing under lease
made prior to May 7, 1943, which is the effect-
ive date of the Act.

     "The Act imposes a duty upon all departments
and agencies of the State Government, when rental
space is needed for carrying on the essential func-
tions of such agencies or departments of the State
Government, to submit to the State Board of Control
a request giving the type, kind, and size of build-
ing needed, together with any other necessary

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Hon. George H. Sheppard, Page 2

description, and to state the purpose for which it will be used and the need therefor; and, if in the discretion of the Board such space is needed, the Board of Control may proceed to advertise and let bids, etc.

"This statute does not prescribe a penalty for failure of such departments or agencies of the State Government to make the request to the Board of Control.

"2. Is this department authorized to issue warrant in payment of claim for rental where the department failed to comply with S. B. No. 266?"

Senate Bill 266 was enacted by the 48th Legislature as Chapter 258, Acts 1943. According to a footnote appearing on page 385 of Vernon's Texas Session Law Service, this Act will be included in Vernon's Annotated Civil Statutes as Article 666b. For the purposes of this opinion, however, we shall refer to this legislation hereinafter as Senate Bill No. 266, or simply as the Bill or the Act.

The portions of this legislation with which your inquiries are concerned, being Sections 1, 2 and 3 of the Act, read as follows:

"Section 1. Hereafter all departments and agencies of the State Government, when rental space is needed for carrying on the essential functions of such agencies or departments of the State Government, shall submit to the State Board of Control a request therefor, giving the type, kind, and size of building needed, together with any other necessary description, and stating the purpose for which it will be used and the need therefor.

"Section 2. The State Board of Control, upon receipt of such request, and if the money has been made available to pay the rental thereon, and if, in the discretion of the Board such space is needed,

Hon. George H. Sheppard, Page 3

shall forthwith advertise in a newspaper, which
has been regularly published and circulated in
the city, or town, where such rental space is
sought, for bids on such rental space, for the
uses indicated and for a period of not to exceed
two years. After such bids have been received
by the State Board of Control at its principal
office in Austin, Texas, and publicly opened,
the award for such rental contract will be made
to the lowest and best bidder, and upon such
other terms as may be agreed upon. The terms
of the contract, together with the notice of
the award of the State Board of Control will
be submitted to the Attorney General of Texas,
who will cause to be prepared and executed in
accordance with the terms of the agreement,
such contract in quadruplicate; one of which
will be kept by each party thereto, one by the
State Board of Control, and one by the Attorney
General of Texas. The parties to such contract
will be the department or agency of the govern-
ment using the space as lessee and the party
renting the space as lessor.

"Section 3. Within thirty days after the
effective date of this Act, all departments and
agencies of the State Government at this time
leasing or renting space from any person, firm,
or corporation whomsoever, will cause to be pre-
pared and delivered to the State Board of Control
in Austin, Texas, a copy of any written rental or
lease agreement now in force and current, or any
statement of any oral understanding upon which
any lease or rental public funds are being ex-
pended, if such action has not already been taken."

This bill was passed unanimously by both houses of
the Legislature, and, under its emergency clause, as you
stated in your letter, it became effective immediately upon
approval on May 7th.

Your first inquiry raises the question of whether
the Act invalidates or conditions existing leases, and gives

Hon. George H. Sheppard, Page 4

rise to the following two propositions:  (1) Whether the Legislature by enactment of the first two sections of the Bill intended to cancel existing leases and rental agreements and thus to require State departments and agencies immediately to secure new contracts under the method prescribed in these two sections; and/or (2) Whether the Legislature intended to condition the continued existence of leases and rental agreements upon a literal compliance by such departments and agencies with the provisions of Section 3 of the Act.

If either or both of these propositions should be resolved in the affirmative, then the Act might conceivably affect the payment of current rentals under existing contracts which had their inception prior to May 7th.  If both should be resolved in the negative, we would be required to hold that the Act has no effect upon the payments in question.

In the absence of any information to the contrary, we assume that all of the contracts you have in mind were valid agreements, properly entered into, and binding upon the State prior to May 7th.

It is well settled that when the State makes a contract it is as much bound thereby as a citizen would be bound upon a like contract.  State v. Elliot (Civ. App., Galveston, 1919) 212 S. W. 695, error refused.  The cloak of sovereignty does not relieve the State of the duty to respect its contractual obligations.  The fact that it cannot be sued without its consent in no way detracts from the proposition that it is liable under its contracts.

As pointed out by Chief Justice McClendon of the Austin Court of Civil Appeals, "The impotence of private individuals to enforce through their courts their contractual rights against the State, by reason of inability to sue the State without its consent . . . does not affect the binding force of state obligations. . ."  State v. Elliot, supra.

The sanctity of contracts is safeguarded by both the Constitution of Texas and the Constitution of the United States.

Hon. George H. Sheppard, Page 5

Section 16 of Article I of the State Constitution, a part of our Bill of Rights, provides:

"No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts shall be made."

Section 10 of Article 1 of the Federal Constitution provides:

"No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . ."

Our Supreme Court in two vigorous opinions by the late Chief Justice Cureton has declared the right of contract to be one of the most sacred rights protected by these constitutions. See Travelers Ins. Co. v. Marshall, 124 Tex. 45, 76 S. W. (2) 1007, 96 A. L. R. 802, and Langever v. Miller, 124 Tex. 80, 76 S. W. (2) 1025, 96 A. L. R. 836, refusing error (Civ. App.) 73 S. W. (2) 634.

Those with whom the State has contracted for rental space have the right to insist upon strict conformance by the State to the provisions of its leases and rental agreements. Any interpretation of Senate Bill 266 which gives it the effect of cancelling valid and binding leases and rental agreements or which conditions liability upon requirements not contemplated by the parties when the contracts were made would clearly make the bill repugnant to the quoted provisions in both Constitutions.

We do not believe that the language of the first three sections of the Act, above quoted, or of any other provision of that Act, is susceptible of the construction suggested. However, even though it could be so construed, we could not interpret it thus except in the absence of any other possible construction which would not render it unconstitutional.

It is well settled that if an act is fairly susceptible of two constructions, under one of which it would be constitutional and under the other of which it would be invalid, the former must prevail. Empire Gas & Fuel Co. v. State, 121 Tex. 138, 47 S. W. (2) 265, affirming 21 S. W. (2d) 376; 39

Hon. George H. Sheppard, Page 6

Tex. Jur. 207, and cases cited in footnote 5.

We are of the opinion that, properly construed according to the plain intent of the language used by the Legislature, the Act does not purport to cancel or condition liability of the State under the leases and rental agreements you mention.

It will be observed that the first two sections of the Act are prospective in their scope and contain provisions relating to the executing of lease contracts and rental agreements in the future. We perceive nothing in these two sections which would lead us to believe that the Legislature intended to cancel existing contracts and require all departments and agencies immediately to secure new leases in the manner prescribed.

Section 1 of the Act provides that whenever "rental space is needed for carrying on the essential functions of such agencies or departments of the State government . . ." such space should be procured under the procedure outlined in the Act. Obviously, a department or agency presently occupying sufficient space under a valid lease contract or agreement is not now in need of rental space. Of course, if such agency or department should need additional space, or if its lease or rental contract has expired since the enactment of the bill, the rental space must be secured in accordance with the procedure set out.

"The prescribing of a mode of exercising a power by such subordinate agencies of the Government has often been held to be a restriction to that mode." Ferguson v. Halsell, 47 Tex. 421.

While it is true that Section 3 of the Act requires all departments and agencies occupying rental space under existing leases or rental agreements to deliver copies of such leases or agreements to the Board of Control within thirty days after the effective date of the Act, it is likewise true, as you have pointed out, that the Act provides no penalty for

Hon. George H. Sheppard, Page 7

failure to comply with this provision. A discussion of possible means of enforcing this requirement would not be germane to this opinion.

However, we will state that we find nothing in the Act which would authorize you to withhold payments of rentals to induce the departments or agencies to comply with this provision.

It is not within the power of a ministerial officer to declare void and refuse to enforce or comply with a contract that has been duly and officially approved by those authorized by law to pass upon and to effect its execution. Charles Scribner's Sons v. Marrs, 114 Tex. 11, 262 S. W. 722.

We might add that this means of coercion might be more painful to its landlord than to the recalcitrant agency or department. We are unwilling to read into the Act such an ineffective sanction in the absence of express language requiring it.

What we have said demonstrates that we are of the opinion that the language of the Act is plain and unambiguous. Since its meaning is clear, under settled rules of statutory construction, the Act should be construed and given effect according to its terms. Gaddy v. First National Bank, 115 Tex. 395, 283 S. W. 472, answering questions certified, 283 S. W. 277; 39 Tex. Jr. 219.

We therefore answer your first question in the negative. You are therefore respectfully advised, and it is the opinion of this department, that Senate Bill No. 266 will not affect the payment of current rentals accruing under a valid lease made prior to May 7th, which is still in effect.

What we have already said answers in part your second question. We are of the opinion that failure of an agency or department to comply with the provisions of Section 3 of the Act does not affect your authority to issue a warrant in payment of a claim for rental against a department which had not complied with this provision, and you are as fully authorized to issue such warrant as you were before passage of Senate Bill No. 266.

Hon. George H. Sheppard, Page 8

Any new lease or rental contract entered into after passage of Senate Bill No. 266 must be executed in the manner prescribed by Sections 1 and 2 of the Act. The Legislature having provided a mode for the securing of rental space, the agencies and departments affected are restricted to that mode and must conform to these requirements. Ferguson v. Halsell, 47 Tex. 421. This being the only method whereby State departments and agencies may secure rental space, the State would not be bound by any contract not entered into in strict conformance with the provisions of Sections1 and 2 of the Act. State v. Perlstein (Civ. App. Austin, 1935) 79 S. W. (2d) 143, error dismissed; Nichols v. State, 11 Civ. App. 327, 32 S. W. 452.

In reply to your second question you are, therefore, respectfully advised that you would not be authorized to issue warrants in payment of claims for rental under leases or rental agreements entered into since May 7th, unless such leases and rental agreement were entered into in the manner prescribed by Sections 1 and 2 of Senate Bill No. 266.

As an aid to you in administering claims under this legislation, we might add further that all rental agreements and leases, which have not expired previously, will automatically terminate on August 31, 1943, the last day of the current biennium. The Supreme Court has ruled that the State cannot be bound upon a lease contract that extends beyond the two year period covered by the appropriation under which rentals thereunder are payable. Fort Worth Cavalry Club v. Sheppard, 125 Tex. 339, 83 S. W. (2d) 660. Therefore, all state departments affected by this legislation must enter into new lease agreements to take effect on September 1, 1943.

Trusting that we have fully answered your inquiry and that you will call upon us if we can be of further service, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _Peter Maniscalco_
Peter Maniscalco
Assistant

PM:fo
of
C. C. R.

APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN